Jones, C. J.
This was a motion for a new trial, on the ground of the admission of illegal testimony, and the misdirection of the Judge to the jury.
The plaintiffs’ demand was for the surplus and balance of the nett proceeds of a consignment of brandy, shipped by them to the defendant, over and above the net proceeds of a consignment of cotton received by them from him, for sale for his account and risk, and sold by them.
The defence was, that the brandy was a remittance in anticipation of the proceeds of the sale of the cotton, to be reimbursed *44 out of those proceeds, when the cotton should be sold ; and that the cotton, when received by the plaintiffs, was worth more money in the market to which it was sent, and if sold in conformity with the instructions of the defendant, would have produced a larger amount of net proceeds than the price and value of the brandy; but that the plaintiffs had, in disregard of the orders of the defendant, and contrary to their duty as factors, so neglected and delayed the sales of the cotton, and retained and kept the same so long on hand unsold, that the same was greatly reduced in value, and was lost to him, by which misconduct, they had made the cotton their own, and become chargeable and accountable to him for the market value of the same at the time of the consignment, 'which was more than sufficient to satisfy the balance claimed of him on the sales of the brandy.
It appeared by the testimony of the plaintiffs’ witnesses, that the plaintiffs, in December, 1818, received from the defendant a consignment of seventeen bales of cotton, for sale on his account, accompanied by a letter of the date of October 9th, 1818, advising of the shipment, in which letter, speaking of the consignment, he has this observation: “ I believe you will think with “ me that it will be best not to hold on too long, as the new crops “ of cotton will be shipping in the course of a month or six weeks. “ I shall be well satisfied if this shipment produces net amount of “ invoice. I trust entirely to your good judgment in effecting sales, “ without fixing any limitation. The proceeds please return in “ brandy, the same as Messrs. Bogert and Kneeland order for the “ proceeds of the shipment by the same vessel.”
By a letter from the defendant to the plaintiffs, of the 10th of October, 1818, he observes that it was very likely he might spend part of the then ensuing winter in Georgia or New-Orleans, and he therefore requested them to invest the proceeds of his cotton in brandy, the same as Messrs. B. & K. had ordered for their account, and include it in the same bill of lading consigned to them, making at the same time a distinct invoice for his parcel.
The cotton arrived to a dull market, and the prices were merely nominal. The plaintiffs held the defendant’s parcel at the price which had been obtained on the last sales, at which it was offer *45 ed, but no sales were effected. But eighteen pipes of brandy were shipped by them to the defendant, in anticipation of the proceeds of the cotton, and charged to the defendant’s account. The brandy was invoiced as a shipment for the account and risk of the defendant.
The cotton remained a longtime on hand unsold; and after various ineffectual efforts to dispose of the same, of which the defendant was constantly kept advised, and his advice and special direction solicited for their government, sales were finally effected of ten bales at reduced prices, and accounts of the sales rendered by the factors. The remaining seven bales being wholly unsaleable at Nantz at any price, were sent by them to Lisle for a market. At the trial, the defendant failed in his claims to charge the factors with the value of the cotton in controversy, the Court being of opinion that they had been in no default: and in the form the controversy took, the question between the parties was finally reduced to the sufficiency of the proof of the sale of the seven bales sent to Lisle, and the prices for which the same were sold.
A long correspondence betweeen the parties, consisting however, almost exclusively of letters from the plaintiffs to the defendant, was in evidence; but it is not material to this motion to give the dates or contents of any of these letters, except those of the 7th May, 1822, and 26th March, 1823, which were made the subject of special exception. The letter of the 7th May, 1822, advised the defendant of the sale of the seven bales of cotton sent to Lisle by the plaintiffs’ correspondent at that place, for $190; this letter professes to enclose account sales of the whole consignment of seventeen bales, and a copy of the account sales made at Lisle, and advises the defendant of a draft upon him for $1267 25-100 at sixty days, as the balance of the account against him. The letter of the 26th March, 1823, which closes the correspondence, complains of the defendant’s silence, and of the dishonour of the plaintiffs’ draft upon him for the balance of the account, and informs him that powers were sent to Bogert and Kneelajnd to collect the amount.
*46 Annexed to the deposition of Bellaire, the plaintiffs’ clerk, taken under a commission, was an account abstracted from the plaintiffs’ books, purporting to be an account of the sales and proceeds of these seventeen bales of cotton, giving a detailed account of the items and particulars of the sales of the ten bales sold at Nantz; but the general results, or net proceeds only of the sales of the seven bales at Lisle.
At the trial, this deposition, and the letters from the plaintiffs to the defendant, were offered in evidence by the plaintiffs, and Henry Kneeland was produced as a witness, who testified that during the winter after the shipment, he was requested to urge the defendant to give further instructions about his cotton, on account of the difficulties in the market; that he did so urge him on various occasons; that the defendant gave no positive answer, but left witness under the impression that he would write. No evidence was given of the sale of the seven bales of cotton sent to Lisle, except the plaintiffs’ letters of the 22d May, 1822, and 26th March, 1823, and the accounts abstracted from the plaintiffs’ books. But Henry Kneeland testified, that after the sales were all closed, he handed the accounts to the defendant, who made no objection to any of them, merely saying that the plaintiffs had violated their instructions by holding on too long.
The defendant’s counsel objected to the testimony taken under the commission, and which comprised the copies of the letters of the plaintiffs, and the accounts abstracted from the books of the plaintiffs, as being illegal and improper evidence to be submitted to the jury, touching so much of the account dated Nantz, 17th May, 1822, as related to the seven bales and packs of cotton in the said account mentioned as having been sent to Lisle; and insisted that there was no legal evidence of the sale of the seven bales and packs at Lisle, and that the letters were not evidence of the facts contained in them. The Judge ruled that the letters were not evidence of the facts contained in them, but were notice of such facts, which might bind the defendant by his assent and acquiescence: and that as to the sale at Lisle, the letters and the rendering of the accounts, and the answers to Mr. Kneeland, were facts to go to the jury from which they might find such sale; that *47 at all events, it was a question for them under the evidence, whether they were satisfied that such "sale had taken place, and he so instructed the jury, who found a verdict for the plaintiffs.
The material question is, whether the Judge was correct in his opinion and direction to the jury, that the letters of the plaintiffs were legal and proper evidence for them to take into the estimate in deciding upon the fact, of the sale at Lisle. These letters were the written declaration of the plaintiffs themselves, and would seem to come within the rule which excludes a party to the suit from testifying in his own favour. The plaintiffs could not have been received to testify on oath to the matters stated in their letters, and to admit the letters themselves as evidence of these matters, would be to give to a statement which has not the sanction of an oath, a credit in a court of justice, to which the same statement would not be entitled, if in the form of a deposition. The fact in dispute, was the sale of the seven bales of cotton at Lisle. The best evidence of that fact would have been the deposition of the agent, who made the sale, or of some clerk, agent, or other person at Lisle, who was conusant of it. Such testimony is always desirable, where any question is made of the fact, or any collateral matters may be subjects of inquiry, because it opens the field of investigation by the cross-examination of the witnesses. The mere accounts of sales are not competent evidence of the fact of sale ; they may be fictitious, or the mere cover of a fraudulent or indefensible disposition of the goods. The silence of the party to whom they are rendered, and his acquiescence in them, may be evidence to a jury of his tacit assent to tlieir reality and correctness, and may be held to conclude him. No actual proof of the fact of sale was made in this case. The substitute for it was the letters in question, and the testimony of Henry Kneeland.
Were the letters admissible, or could they in a legal sense have any weight in the scale of proof 1 And if not, could the direction of the Judge be correct, that from those letters, and the testimony of Kneeland, the jury were to form their conclusion upon the fact 1 These letters were well calculated to make an impression upon the jury, and if allowed the influence of legal *48 proof, they must have been of decisive weight. They averred the fact of the sale in positive terms, and the writer of them was proved to be a man of integrity, and entitled to full credit for veracity. The jury, upon written evidence emanating from such a source, and so clear and explicit in its character, could not doubt or hesitate upon their verdict. If, then, those letters were illegal or inadmissible evidence for the proof of that fact, the Judge erred in the direction he gave, and the jury have acted under improper influence in coming to the result they did. It follows that a new trial must be granted, unless some redeeming circumstance has cured the fault, and given efficacy to the judgment of the jury.
It was contended that the other evidence in the cause was sufficient to establish the fact of the sale, and that the verdict must have been the same without the letters, as with them; and of that opinion is the Court. But notwithstanding the sufficiency of the proof of the rendition of the account to the defendant, and his answer to Kneeland, to establish the fact of the sale, and the correctness of the account of it, or such an implied admission of those matters, as to dispense with other proof, and entitle the plaintiffs to a verdict, yet the admission of improper evidence, and the direction of the Judge to the jury, to take the illegal as well as the legal evidence into consideration in deciding the question, on the authority of the case of Marquand v. Webb, [16 Johns. R. 89.] would vitiate the verdict.
In that case, B. Gomez, a part owner of a privateer, was admitted as a witness to prove that the defendant, who was sued for the expenses of repairs to the vessel, was also a part owner of her. Two other witnesses testified to the same fact, one of whom, a Mr. Briggs, the subsequent purchaser of the vessel, expressly proved that the defendant and others were the owners at the time of her repairs. The Court held that Gomez was an incompetent witness, and though the fact proved by him was proved by two other witnesses, they could not say that his evidence might be rejected as unnecessary; and as it appeared in the case, it vitiated the verdict, and the judgment was reversed, with directions that a venire de novo issue in the Court below.
*49 The principle, as stated by Spencer, C. J., in the form of a quaere, was, that if improper evidence is admitted, though the other evidence may, in the opinion of, the Court, be fully sufficient to entitle the plaintiff to a recovery, the verdict must be set aside, because the Court is not authorized to say that the jury disregarded the improper evidence. If that case be law, and the principle it established be sound, how can this verdict stand 1 Suppose the other evidence in this cause, to establish beyond a doubt the fact, of sale, and the justice of the account, still the letters, the written declaration of the plaintiffs, were admitted, and the jury directed to consider them as part of the evidence to prove that fact. And if that evidence was inadmissible for that purpose, it vitiates the verdict; for we cannot know what weight was attached to it by the jury, nor how far it governed their opinion.
It may perhaps be proper to advert to the passing remark of Chief Justice Mansfield on this point, in Horford v. Wilson. [1 Taunton, 12.] In that case, parol evidence was admitted of the contents of a letter 6from the holder of a bill of exchange to the drawer giving him notice of the dishonour of the bill, the letter itself not being produced at the trial, nor any notice given to the defendant to produce it. Other evidence was produced by the plaintiff fully sufficient for the jury to presume notice, and it did not appear that the defendant had objected to the parol proof of the contents of the letter at the trial. But it was made the foundation of a motion for a new trial, and the Chief Justice upon the argument when the point was opened, interrupting the counsel, observed that he did not remember that any such objection was made upon the trial, and adds this remark, ‘e neither will the court set aside a verdict on account of the admission of evidence which ought not have been received, provided there be sufficient without it, to authorize the finding of the Jury.” No such notice is taken of the point in any part of the argument, or in the decision of the court. This dictum, for surely such must be its true appellation, must be understood in reference to the facts of the case, and to mean, that the admission of secondary evidence, or *50 of such, which if objected to would have been excluded, but which was not objected to, is not a sufficient cause to set aside a verdict when the other facts in the cause were sufficient to support it: and the utmost to which the Chief Justice can be supposed to intend to carry his. position, is, that there may be cases of the admission of evidence which ought not in strictness to be received, where the verdict if otherwise sufficiently sustained will be suffered to stand. The learned Judge could not intend to affirm as a general proposition, that illegal evidence, improperly admitted by the Judge against the objection of the party, will not in any case vitiate the verdict, if the other evidence in the cause is sufficient to entitle the plaintiff to recover, or if he must necessarily be so understood, his opinion is in direct conflict with the decision of our own Supreme Court in a case which turned solely upon that point, and his authority, must in this court yield to that of our own Judges.
The case of Marquand v. Webb, does not rest upon the authority of the Supreme Court alone. It was confirmed by the Court for the correction of errors and made the basis of the decision of that Court in the case of Osgood v. The Manhattan Company. [3 Cowen R. 612.] Suydam, senator, who delivered the only opinion given in the case, referring to the case of Marquand v. Webb, expresses his concurrence in the principle it established. It is well settled, he says, that if improper evidence be given, although it may be cumulative only, the judgment must be reversed, for we cannot say what effect such evidence may have had on the minds of a jury, and he refers to the case of Marquand v. Webb, as a decisive authority upon the point. I am compelled therefore to come to the conclusion that the verdict must be set aside, though I see no reason for supposing that there can be a different result from another trial.

New trial granted.

Note.—Notwithstanding the case of Marquand v. Webb [16 J. R. 89] and that, Osgood v. The Manhattan In. Co. [3 Cowen’s R. 612.] there seems to be something unsettled as to the principal point of the case above decided. See 4 Wend. R. 458. Supervisors of Chenango, v. Birdsall. See also the case of Doe, dem. Lord Teynham v. Tyler, 6 Bingham, R. 561. The marginal note of the latter case is as *51 follows. “ The Court will not grant a new trial on the ground that evidence has “ been admitted which ought to have been rejected, if, exclusive of such evidence, " there be enough to warrant the finding of the Jury.”