Waring agt. United States Telegraph Company.

## NEW YORK COMMON PLEAS.

RICHARD S. WARING and HENRY H. KING, *respondents*, agt. THE UNITED STATES TELEGRAPH COMPANY, *appellant.*

Where the plaintiffs, previous to commencing their action against the defendant, a telegraph company, for damages in consequence of a negligent failure to send their message in time, write a letter to the defendant giving a detailed statement of their version of the facts upon which they claim damages, and such letter is not answered by the defendant, but is detained by it, without any answer, it is *not admissible on the trial as evidence* for the plaintiffs.

It would be preposterous to hold that all the facts stated in such a letter were admitted by the corporation, because the president, secretary, or some officer of the company, on an application for compensation for alleged damages, did not by letter deny the truth of them.

Inference from a party preserving a silence is considered a very dangerous kind of evidence, and is to be kept within very strict limits.

*General Term, January,* 1872.

*Before* DALY, *C. J.,* LAWRENCE and J. F. DALY, *J.J.*

THIS is an appeal from a judgment entered on a verdict, and from an order denying a new trial on the judge's minutes.

The action was brought to recover damages from defendant's negligent failure to send two dispatches from Pittsburg to New York on the 17th December, 1864. The defendant answered that its omission to send the dispatches immediately after receiving them was caused by interruptions in the working of its lines, etc.

The defendant excepted on the trial to the admission of certain testimony, especially to the admission of certain letters which passed between the parties and to certain rulings

of the court upon motions to dismiss, and to certain objectionable instructions and refusals of instructions to the jury.

GEORGE W. SOREN, *for appellant.*

I. It was error to receive in evidence the letters put in by plaintiffs.

1. The proposed testimony was not admissible on the ground suggested by the court, for the correspodence disclosed no express admission by defendant " as to the hour of receiving the dispatch," nor, indeed, of any fact alleged in plaintiffs' letters.

II. It can hardly be necessary to urge that the letters were not admissible on the grounds stated by plaintiffs' counsel. There is, however, very explicit authority against plaintiffs' proposition that the defendant was bound, as by an admission, because it " never questioned the facts " as alleged by the plaintiffs.

In such a case Lord TENTERDEN held, where plaintiff wrote a letter to defendant, which the latter did not answer, that plaintiff had no right to have the contents of the letter read at the trial as showing an admission from acquiesence. What was said to a man before his face, he was in some degree, called on to contradict, if he did not acquiesce in it; but it was too much to say that a man by omitting to answer a letter admitted the truth of the statements contained in it. (*Farlie* agt. *Denton*, 3 C. & P., 103; *Doe* agt. *Frankis*, 11 *Ad. & E.*, 795.)

III. As to the further suggestions of the court that the letters might go to the jury as a part of the *res gestae*, an inspection of the correspondence will show that the ground was untenable.

(*a.*) In the first place there was neither "admission or denial" of any fact by the defendant. The defendant was entirely silent as to plaintiffs' allegations of facts.

(*b*). The principle of *res gestae* did not apply to the matter

in question at all. Plaintiffs' letter of March 13th, was their own version of their cause of action, made up partially of even heresay statements three months after the facts occurred.

IV. The recital of facts in the letter of March 13th, was an unsworn and *ex parte* statement of the very things which were set forth in the complaint, and which defendant, by joining issue, had challenged plaintiff to prove under oath, and under the scrutiny of a cross-examination, and within the just limitations prescribed by the rules of evidence.

(*a.*) Many of the alleged facts in favor of the plaintiffs, and very damaging facts to the defendant, were thus allowed to go to the jury without the formality of legal proof.

Thus plaintiffs were allowed to state that when S. T. Waring called at 2:40 o'clock he inquired whether the "previous dispatches" (both) had gone, and that defendant's clerk answered, yes. His testimony on the trial did not come up to that. Also that "Fulwood, defendant's manager, spoke up and said, yes, they have gone." He did not undertake under oath and swear to anything whatever of that sort.

V. But worse than this, and more detrimental and unjust to defendant, the admission of this evidence permitted the plaintiffs to place their unsworn statements before the jury with a criminating and very mischievous color.

See, for example, the statement that the operators' room was occupied only by "one small boy," who "did not appear able to answer promptly;" that finding him engaged in sending dispatahes from the top of a pile of thirty or forty, Waring "found his first two dispatches at the very bottom of the pile, the third and last being the only one which had been sent."

As to the "third and last dispatch," defendant had not undertaken to send it all. Plaintiffs sent it by Western Union line, as their own witness testifies on the trial. The imputation of carelessness and lack of method in our office on this particular ground, was therefore, unfounded and unjust.

As examples of the same coloring of evidence, note the allegations, that " the 2,000 barrels would have been sold at 81 and 82 cents, but for the gross negligence of the employees of your 'company, in either not at once sending, or declaring their inability to send immediately, our dispatches." Here the plaintiffs were permitted to testify not only all the facts, but all the law which was essential to their recovery.

VI. But the plaintiffs were suffered not only to state facts, which, if they had been adduced in the regular way might have been admissible, but to put before the jury entirely incompetent matter, the natural and designed effect of which, however, was to put the defendant in a more odious and embarrassing position than any admissible evidence could have done.

See the letter of June 14th, 1865, followed up by that of the defendant, enclosing the opinion of its counsel, against paying the claim.

VII. The suffering all this *ex parte* unsworn, argumentative, and incriminating matter to go to the jury under the express sanction of the court, against the strenuous objections of defendant's counsel, without any qualification, either at the time of receiving it, or on the charge, was grossly unfair to defendant. It was entitled eminently in such a case, to a trial upon sworn testimony as to bald facts, and not upon unverified allegations covering everything essential to plaintiffs' case, and pressed to the jury with explicit charges of gross negligence and unfair dealing on the part of the defendant.

VIII. In a case of far less irregularity than this, the Court reversed a judgment against defendant and granted a new trial, because a witness for the plaintiff had been permitted to testify both orally, and by production of a letter from one O'Brien, which was received in evidence, that O'Brien, to whom the missing despatch had been directed, did not buy the stock ordered, though advised of the contents of the telegram by letter, because the telegram itself had failed to

reach him. At *fol.* 160 is just such an objectionable declaration of third persons, namely, that Macy & Sons could easily have sold plaintiffs' oil at the highest price claimed, if the telegram had been received in time. (*Wenger* agt. *U. S. Tel. Co., 53 Penn.,* 262.

IX. It is no good answer to the objections now made to this part of the evidence, that some of the statements which it contains were put in evidence on the trial. It is fatal error that such evidence went in at all in this way. And the worst of it plaintiffs did not undertake to prove in any other way.

F. F. MARBURY, JR., and JOSEPH H. CHOATE, *for respondents.*

*Extract from respondents' points.*—And this is the only passage relating to the point on which the appeal was argued.

" *Fifth.*—The numerous exceptions taken by the defendant upon the admission or exclusion of testimony will all be found immaterial.

" The direct correspondence between the parties before suit brought in respect to the claim and the facts out of which it arose was properly received. Such correspondence is always material as pertinent to the issues of fact to be determined. As a statement by the one party in relation to the same, with the admissions, denials, or modifications expressed or implied in the replies or failures to reply on the other."

*By the court,* DALY, *C. J.*—The defendants rest their application for a new trial upon one ground solely, that it was an error on the part of the court to allow the letters which had passed between the 13th of March and the 19th of September, 1865, to be used as evidence in the cause and the plaintiffs have furnished no answer to it. The correspon-

dence was objected to as irrelevant, and it certainly was, as it took place after the cause of action had arisen, and had relation to the settlement of the plaintifls' claim, without suit.

The first letter of March 13th is an elborate statement in narrative form on the part of the plaintiffs of the facts and circumstances relied on by them as showing that they were entitled to recover from the company the sum of $9,880 23, and was written with a view of being laid before the board of directors of the company. The next was a letter of the plaintiffs asking what decision had been arrived at by the company, and was followed by a brief answer from the president that the subject of the claim had been referred to their legal adviser. This was followed by a letter of the plaintiffs complaining of the course that had been taken, and asking what conclusion the counsel had come to. The remaining part of the correspondence consists of further letters of the plaintiffs wishing to know whether the defendants had concluded to refuse to pay the claim, and further letters from the president apologizing for the delay and finally transmitting the written opinion of the company's counsel, which was adverse to the plaintiffs' claim.

This correspondence was not, it would seem from the judges remark, admitted as of any materiality in itself. He said that if it contained admissions as to the hour of receiving the despatch, he thought it proper that it should go to the jury: that where the fact was material to the issue, the operation of it and its denial or admission in a subsequent letter, he would allow to go to the jury as a part of the res gestae.

The letter of the plaintiffs with which this correspondence opened, did contain a statement of the exact time when the despatch was left at the company's office to wit, the 17th of December 1864, at ten minutes past twelve o'clock P. M. There was no admission or denial of this or of any of the facts consecutively detailed in the first letter written by the

plaintiffs, unless the omission of the company or of any of its officers to deny formally by letter what was contained in the plaintiffs letter to the president, is to be construed into an admission of everything that was stated in that letter, which would be carrying the rule respecting admission to an unwarrantable extent. "What is said to a man to his face," said Lord Tenterden in (*Fairlie* agt. *Denton,* 3 *Car. & P.,* 103), he is in some degree called upon to contradict if he does not acquiesce in it; but the answering of a letter is quite different, and it is too much to say that a man by not answering a letter at all events admits the truth of the statements that letter contains." In the present case a party having a claim against a corporation, writes a letter to its principal officer, giving a detailed statement of all the facts upon which the claim is founded that it may be laid before the board of directors in the expectation that it will satisfy them of the liability of the corporation and that they will direct it to be paid, and is officially answered by the secretary of the company, that the subject of the claim has been referred to their legal adviser, and after some time has intervened, the president transmitting the written statement of the counsel, that in his opinion the company have a good defense and that he advises against paying the claim. There is nothing in this that can be regarded as an admission of the fact contained in the plaintiffs letter, which would entitle it to be used as evidence to prove these facts. It would be preposterious to hold that all the facts stated in it were admitted by the corporation, because the president secretary or some officer of the company on an application for compensation for alleged damages, did not by letter deny the truth of them. Even admission inferred from acquiescence in verbal statement made in a parties presence are received only when the declaration or statement made, is of a kind which calls for immediate contradiction, or is such as would naturrally provoke or lead to some action or reply on the part of the person to whom or in respect to whom it is made;

because inference from a party preserving a silence is considered a very dangerous kind of evidence, and is to be kept within very strict limits (*Child* agt. *Grace,* 3 *C. & P.,* 193; 14 *Serg. & R.,* 393; 1 *Greenleaf Evid.,* 199).

It was not essential to resort to the correspondence, to prove the time when the first message had been delivered, for the plaintiffs' witness, King, had already testified that he left the message at ten minutes after twelve o'clock P. M. by the clock on the wall of the telegraph company, and identified as his, an entry on the message to that effect, made at the time, and that he stated to the person that was there (the witness Fullwood) the hour as indicated by the clock, and explained to him how necessary it was that the message should reach New York by one o'clock.

Now the witness Fullwood testified that he had no recollection of receiving the message from King or of having had any conversation with him that day, and the person whose duty it was to receive messages, the witness Fulton testified that he received it at fifteen minutes after twelve o'clock M. ; that he noted the time in a book, and took it from a clock in the office.

The judge regarded the time when the dispatch was received as material to the issue, and it certainly was, for there was conflict upon that point between plaintiffs and defendants' witnesses, and conflict also in respect to what subsequently occurred throughout that day.

The letter of the plaintiffs, which the judge admitted, not only corroborates the statement of the witness King as to the exact time, but also the testimony of both King and Waring (the plaintiffs), in respect to other matters, during the day, occurring between them and the defendants' employees, and also contained statements of facts which neither of them had testified to. Now being received as an admission on the part of the defendants, it is impossible to say what effect it may have had upon the jury. It was an action for negligence, and the judge left it to the jury to say whether the messages failed

to reach their destination, because of the misconduct and negligence of the defendants' agents.

If the facts were as set forth in plaintiffs' letter, it was a very plain case of negligence, and the jury, for all we know, may have treated what was stated in the letter as admitted by defendants, because there was no denial of it on their part by letter. Some very material things bearing on the question of negligence were stated in this letter, and were not verified by the plaintiffs' witnesses, one of which will suffice.

The letter states that when the second message was delivered at the office by Temple at 12:45 o'clock P.M. he inquired if the previous dispatch had gone forward, and that the clerk at the counter answered, "yes;" and Fullwood, the manager, "yes, they have gone," which, if they had so stated, was untrue, and calculated to mislead the plaintiffs. But Temple, when summoned as a witness, gave all the conversation that took place at the telegraph office that he could remember, and says nothing about his having made this inquiry. The fact was material for the plaintiffs' witness, Waring, fixed the time of the sending of the second message at about fifteen minutes past one o'clock, and at that time Fullwood was not in the office, for he went to his dinner at half-past one o'clock, and the letter and the testimony of Waring together were to the effect that the plaintiffs' agent was told that the two first messages had been sent to New York. The plaintiff King testified that if Fullwood had not answered when they sent to the telegraph office at 2:30, "your two dispatches are gone," if he had not made that misrepresentation he, the witness, would have taken the two dispatches and sent them with the third at 2:30 as sales could then be effected in New York before five o'clock. Now, Fullwood had no recollection of saying this, and, in reply to a juror, testified that the general course when the line was down was to say when a message came, "we can not put yours through; go to another line;" so that the fact whether he made the misrepresentation or not in respect to the two first

messages, was a very material question in the case. Indeed, King testified that if they had got two dispatches when they took the third to the other office they would have effected the sale.

The defendant's operator testified that it was a cloudy, wet and gloomy day; that the wires were in working order until half-past 11 o'clock A.M., when the last message was sent by him, and were interrupted from that time until half-past three o'clock in the afternoon, when the next message was sent, and that they continued in order until nine o'clock in the evening; that when the interruption was temporary it was customary to receive messages, but that when the derangement was serious and likely to cause considerable delay it was customary to inform customers of the fact when offering their messages.

The point in the case was, therefore, whether the defendant's agent had been advised of the importance of the immediate transmission of the plaintiffs two first messages and had prevented the plaintiffs from sending them by the other lines in time to effect the sale in New York, by representing that they had been sent, when it was not the fact.

The two witnesses of the defendant, Fullwood and Fulton, one the general manager, and the other the clerk who received messages, had no recollection of any such statement being made to them or by them, as the witnesses King, Temple and O. T. Waring testified to. The first message was left, according to the defendants' witnesses, at fifteen minutes past twelve o'clock, and the second at half-past one, and the line had ceased working for two hours, when the second message was received.

It is suggested that there is evidence uncontradicted in the case sufficient to warrant the verdict as matter of law, but I do not think that we can assume this. The testimony of Fullwood and Fulton was generally loose, and, as it strikes us, unsatisfactory. But the weight or value to be attached to it was for the jury, and the judge, very properly, left the

case upon the whole evidence to them. The plaintiffs' letter, as a statement of facts, was stronger than the other evidence which the plaintiffs gave upon the trial, and, as the defendants' counsel has argued upon this matter, there is a "color." about it that gives a very strong and decided impression of very culpable negligence on the part of the defendant, or rather of their agent. We can not say that the jury were not influenced by it, but it could not, by any possibility, have affected the verdict; and where such is the case, the only safe course is to order a new trial. (*Gillett* agt. *Mead*, 7 *Wend.*, 193; *Benjamin* agt. *Smith*, 12 *Id.*, 404; *Clark* agt. *Vorce*, 19 *Id.*, 232; *Williams* agt. *Fitch*, 18 *N. Y.*, 546; *Anthoine* agt. *Coit*, 2 *Hall*, 40; *Underhill* agt. *N. Y. & H. R. R. Co.*, 21 *Barb.*, 496–7; *Clark* agt. *Crandall*, 3 *Barb.*, 613.)

Judgment reversed and new trial ordered.

LARREMORE and J. F. DALY, *JJ.*, concurring.