(12 Misc. Rep. 127.)

### O'BRIEN v. PRUDENTIAL INS. CO. OF AMERICA.

(Common Pleas of New York City and County, General Term. April 1, 1895.)

1. INSURANCE—CANCELLATION OF POLICY—NONPAYMENT OF PREMIUMS.

A policy which provides that the company may cancel it without notice unless the premiums are paid within a certain time does not become void merely by nonpayment of the premiums within such time, but it remains in force until affirmative action is taken by the company to cancel it.

2. SAME—ACTION ON POLICY—EVIDENCE.

In an action on a life insurance policy, correspondence between defendant and plaintiff's attorney with respect to his demands for the premium receipt book which had been delivered to the company with the proofs of loss, and which plaintiff claimed had been altered while in the company's hands, is admissible to show that the book had been in possession of defendant for a certain time before it was returned; that plaintiff's attorney claimed that it contained certain entries; and that, when it was returned, he called attention to the fact that there appeared to be an erasure of such entries.

Appeal from trial term.

Action by Kate O'Brien against the Prudential Insurance Company of America on two life insurance policies. From a judgment entered on the verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Wm. O. Campbell, for appellant.

Blackwell Bros., for respondent.

DALY, C. J. The question upon the appeal is one of fact, as to which the jury has found in favor of the plaintiff, upon sufficient evidence. It is undisputed that the premiums were in arrears for 10 weeks on November 23, 1893, when Zahner, the assistant superintendent of the company, called on Mrs. O'Brien. He was not the regular collecting agent, but called because the premiums were long in arrears. The company had issued six or more policies on

the lives of plaintiff's family,—these two on her husband's life, one on her father's, and others upon other members of the family.  Mr. Zahner asked what she could do that week,—if she could settle her father's that week, or, in consequence of his age, it would be lapsed. She told him to come the following day, and then she settled eight weeks of arrears on her father's policy, and asked him how much longer she could run on the other policies, to which he answered two or three weeks.  Within two weeks, one of the collecting agents, named Pfennig, called, and received five dollars, and receipted for ten weeks' premiums for her husband's policy.  This was the day before her husband died, and she had no knowledge at the time of the payment that he was in danger of death.  Such was the plaintiff's testimony, and although Zahner denied that he agreed to extend her time on the policies in suit, and testified that he notified her that they would be lapsed, he admitted receiving a part of the arrears on her father's policy, and that he "let it go" without canceling, because she paid within a few weeks; and he admitted that he had authority to do that for the company.  There was a dispute as to whether the five dollars paid to Pfennig on the 6th of December was tendered back to her shortly after the death of her husband, or not until March 8, 1894.

There was a fair question for the jury upon the evidence as to whether Zahner had not extended the time of payment of the premiums of these policies for a period which had not expired when the insured died, and as to whether he was not duly authorized to do so.  He swore that he had authority to extend the time upon her father's policy, and the verdict should not be disturbed upon that question.  The question of fact was also submitted on the defense that the policies "were both duly lapsed" for the nonpayment of premiums.  Each policy provides that it shall be void if the premiums are not paid according to its terms, and provides that if, for any reason, the premium is not collected by the agent when due, it shall be the duty of the policy holder, before the said premium shall be in arrears four weeks, to bring or send said premium to the home office, or to the company's agent; and, in event of a failure to perform this duty, the company may cancel this policy without notice to any person or persons interested therein. This requires some affirmative act on the part of the company to effect a cancellation of a policy.  Brady v. Insurance Co., 9 Misc. Rep. 6, 29 N. Y. Supp. 44.

It is claimed by defendant: That cancellation was effected in this case on November 27, 1893, which was before the death of the insured.  That it was effected in the usual course of business in the following manner: A lapsed policy schedule was made out on November 23, 1893, at the company's office, signed by Pfennig as agent, and Zahner as assistant superintendent, giving a list of six policies, and the "actual date of last payment shown in policy holder's receipt book" as October 23, 1893.  That this schedule was sent to the home office of the company, where it was received on November 24, 1893, and a "Lapse Register," reciting the same facts as to last date of payment of premium, returned to the agent.

Documents bearing all the formal evidence of regularity were produced by defendant to show that this was done; and yet the uncontradicted evidence of the defendant's collecting agent Pfennig shows that the entry of payment of premium due October 23, 1893, was not written on the policy holder's receipt book until December 6, 1893,—the date that he received the five dollars from Mrs. O'Brien, and receipted in her book for it.    When the policy holder's book was returned by the company (to whom it was delivered immediately after the death of the assured), the last entry of payment of premiums appearing in it was for the premium due October 23, 1893.    Plaintiff testified that there were three subsequent entries of payments which Pfennig made on it when he received the five dollars on December 6th, and that they were rubbed out.    Pfennig's entries at that time commenced October 13th, which paid the premium due September 11th, and the last entry must have been of December 6th, paying the premium due November 13th.    An erasure of the three last entries would leave the last payment as of October 23, 1893,—four weeks prior to the date of the "Lapsed Schedule" of November 23d,—and thus bring the cancellation apparently within the terms of the four-weeks clause quoted above, though not so in fact, for the next payment would not be due until October 30th, and the four weeks would not be up on November 23d.    In view of the evidence, amounting to demonstration, that the defendant's documents were false, no court would disturb the finding of the jury against the claim that alleged cancellation of the policy was effected before the death of the assured.

The defendant excepted to the admission of the correspondence between the company and the plaintiff's attorney with respect to his demands for the plaintiff's premium receipt book, which had been delivered to the company with the proof of death of the insured, and which plaintiff claimed had been altered by the erasure of the last three entries made by Pfennig.    If the letters of plaintiff's attorney were offered as proof of the facts recited therein, they would have been inadmissible so far as defendant's reply did not admit such facts and they were unsupported by the evidence in the case.    Waring v. Telegraph Co., 4 Daly, 233.    But the correspondence was material to show that the book had been in the possession of defendant a certain length of time; that, before it was returned, the plaintiff's attorney claimed that it contained certain entries; and that, when it was returned, he called attention to the fact that there appeared to be an erasure of such entries.    This evidence was material and competent to prove the time when the attention of both parties was directed to the condition of the book, and when it was restored to the plaintiff's possession.    As to the statement of fact in the letters that there were apparent erasures, the book itself was produced, and the jury had the best evidence upon that point; and the letters tended to show that the erasures were not made after plaintiff regained possession of it, and nothing was stated in the letters that was not proved by competent evidence.    The material fact stated, that the book originally contained entries of receipts by Pfennig which had been erased, was hardly a matter

of dispute upon the evidence; Pfennig testifying, "I guess I credited the whole five dollars on that book," which would have required 10 entries of 50 cents each, whereas the book showed but 7; and while he said, "There are none that are gone," he reiterated that he gave plaintiff receipts for five dollars on the same book on the same day. It clearly appears, therefore, that the defendant could not have been injuriously affected by the admission of the letters.

Judgment and order affirmed, with costs. All concur.