## 8370.　FOUNTAIN v. SECURITY MUTUAL LIFE INSURANCE COMPANY.

The action was based on a contract governed by the laws of New York. Under the pleadings, the agreed statement of facts, and certain decisions of courts of that State which were introduced in evidence, the judge, sitting by consent without the intervention of a jury, did not err in rendering judgment in favor of the defendant.

DECIDED JULY 5, 1917.

Action on insurance policy; from Pulaski superior court—Judge Graham. December 11, 1916.

*H. F. Lawson,* for plaintiff. *Marion Turner,* for defendant.

BROYLES, P. J. In this case, by agreement, the trial judge passed upon all of the issues of law and fact, upon the following agreed statement of facts:

"1. Mrs. Josie Fountain, the plaintiff, is the widow of Allen T. Fountain, late of said [Pulaski] county, deceased. The said Allen T. Fountain died on November 1, 1914. 2. On the 5th day of July, 1902, the defendant issued to the said Allen T. Fountain a policy of insurance, a copy of which is annexed to the agreed statement of facts, marked exhibit 'A,' in which policy the plaintiff is named as beneficiary. 3. On the 14th day of December, 1912, the said Allen T. Fountain borrowed from the defendant upon said policy of insurance the sum of twelve hundred dollars, the said loan being evidenced by a writing, a copy of which is hereto attached marked exhibit 'B.' 4. The last annual premium made by the said Allen T. Fountain, or by any one for him, on said policy was made on the 5th day of January, 1913, upon which date said annual premium was due, after which date no further annual premium was made upon said policy. The last interest payment made on said loan was paid up to December 14th, 1913, and thereafter no further payment of interest was made on said loan, and no part of the principal of said loan was ever paid. 5. The plaintiff, Mrs. Josie Fountain, did not sign said loan agreement, nor did she know said loan was being made at the time it was made, nor did she in any way ratify the making of said loan. 6. The said defendant has never foreclosed said loan during the lifetime of the said Allen T. Fountain, nor thereafter, but on the 5th day of May, 1914, four months after the lapse of the payment of an annual premium due on January 5th, 1914, said policy of insur-

ance was marked cancelled on the books of the defendant company, in the regular course of business, and under the custom followed by the said defendant, for the failure of the insured to pay the premium due. The said loan of twelve hundred dollars, with interest, was charged against the said policy and the value of the policy charged against it, but no notice was ever received by the plaintiff, Mrs. Josie Fountain, of the action of the defendant as hereinbefore set forth. 7. After failure to make any further payment of annual premium on said policy after January 5th, 1913, the said Allen T. Fountain failed to avail himself of any of the privileges of said policy whereby he could have been reinstated and the said policy revived, and at the time of his death owed the defendant the sum of $1,200.00 principal, besides interest on the same from December 14th, 1913. The sole question to be determined by the court in this case is, what amount, if any, is due the plaintiff upon said policy?"

It is unnecessary to set forth all the provisions of the policy sued upon. One clause of the policy provided that upon the death of the insured it was payable at the home office of the company, which in the policy was shown to be Binghampton, New York. The policy contained also a provision "that the place of this contract is expressly agreed to be in the city of Binghampton, N. Y." It therefore appears that as to this case the law of the State of New York is controlling. The law of that State, as applicable to this policy, was not pleaded by the defendant, and the agreed statement of facts contains nothing in reference thereto. However, from the judgment of the lower court it expressly appears that certain decisions of the courts of the State of New York, to wit, Sabin *v.* Phinney, 134 N. Y. 423 (31 N. E. 1087, 30 Am. St. R. 681), Cavagnaro *v.* Thompson, 78 Misc. 687 (138 N. Y. Supp. 819), and Healy *v.* Prudential Insurance Company, 140 N. Y. Supp. 503, 505, were introduced in evidence by the defendant. It does not appear that any objection was made to the introduction of this evidence, and, under these circumstances, it must be held to be supplemental to the agreed statement of facts, and will be considered by this court in the determination of the case.

The insured had the right, under the policy, to change the beneficiary at any time during its continuance, "by filing with the company a written request, duly executed, on blanks furnished by

the company; such change to take effect only upon the indorsement of the same on the policy by the company."

The only two questions for decision in this case are: first, did the insured have the right, under the provisions of the policy, to pledge the policy to the insurance company for a loan, without the consent of the beneficiary? And, second, if he did have such a right, was there anything due the beneficiary under the policy? The above-mentioned New York decisions introduced in evidence hold, in substance, that the beneficiary under a life-insurance policy which provides that the insured may change the beneficiary at any time has no vested interest in the policy. This being true, and the law of the State of New York being controlling in this case, it clearly appears that the insured had the right, without the consent of the beneficiary, to pledge the policy for the loan which he obtained from the insurance company, and that the loan was valid and binding against the policy. The fact that the beneficiary in the policy was never changed is immaterial.

In our opinion the second question must be answered in the negative. The agreed statement of facts shows that the last premium paid by the insured was on January 5, 1913; which carried the policy to January 5, 1914, with the privilege of reinstatement, under certain conditions, if applied for within six months after the lapse of the policy for non-payment of the annual premium. The twelve-hundred-dollar loan, besides interest thereon, had never been paid, and was outstanding against the policy at the time of the death of the insured. Had the policy been in force, its cash surrender value would have been $1,200, the same amount as the outstanding loan. Under these circumstances, and under the provisions of the policy, the policy never became a paid-up, non-participating contract. The second paragraph of the "privileges" in the policy, of which the insured could have taken advantage, is as follows: "That if, after payment of premiums for three or more years, defaults are made in the payment of any premium, the insured may, within six months after such default, select one of the methods of settlement shown in the table of loans, cash surrender, paid-up and extended insurance values (any indebtedness of the insured to the company being first deducted therefrom). Failing to select a method of settlement within the six months specified, then this policy shall automatically become a non-participat-

ing paid-up policy for the amount stated in the table below, for the end of the last year for which complete annual premiums have been paid, *provided there be no unpaid loan thereon*" (italics ours). There being an unpaid loan on this policy, and it appearing that the insured lived for nearly ten months after the lapse of the policy for non-payment of the last annual premium due, and during all this period of time he made no effort to avail himself of any of the privileges of the policy, in our opinion the policy was absolutely dead at the time of the death of the insured, and nothing was due under it to the beneficiary. It appears that the insurance company cancelled the policy four months after the lapse thereof by reason of the non-payment of the annual premium due, and counsel for the plaintiff in error contends that as this cancellation of the policy by the company was made two months before they had a right to do so, the cancellation was void. In support of this contention he cites *McEachern* v. *New York Life Insurance Co.*, 15 *Ga. App.* 222 (82 S. E. 820). In that case, however, the cancellation of the policy was made not only before the expiration of the six months, *but after the death of the insured; and also a demand for the payment of the policy was made by the administrator of the insured before the expiration of the six months.* The insured in that case having died before the expiration of the six months, and without having exercised his right of election between the privileges specified in the policy, such right survived to his legal representative. In the instant case the insured lived nearly ten months after his default in the payment of- the premium due, and at his death the time had long passed in which he or his representative could have revived the policy or have exercised any right of election of the benefits specified therein. Although the cancellation of the policy was made by the insurance company before the expiration of the six months, the insured, by failing for nearly ten months to take any steps for his reinstatement or a revival of the policy, forfeited all rights under the policy. In view of the outstanding loan, and the length of time that had elapsed since the default in the payment of the last due premium, it is clear to us that at the death of the insured the policy, although prematurely cancelled, had no value whatever. Under the facts of the case the value of the policy had been exhausted by the loan of $1,200.

In our opinion the trial judge did not err in rendering judgment in favor of the defendant.

*Judgment affirmed. Jenkins and Bloodworth, JJ., concur.*