Syllabus.

# Richmond.

### · L. B. McCLANAHAN v. ROANOKE IRON Co. & OTHERS.

### SAME v. WEST ROANOKE LAND Co.

### SAME v. NEW LANSDOWN LAND Co. & OTHERS.

JANUARY 27, 1898.

Absent, Cardwell, J.

1. CHANCERY JURISDICTION—*Laches—Voidable Deed—Acquiescence.*—A testator appointed one of his sons a trustee to receive and hold for the wife and children of another son the share of the estate which would go to that son. Subsequently a suit was instituted in a County Court for the purpose of having a partition of the lands of the testator, and with the additional prayer that if deemed advisable the parcel of said wife and children be sold and the proceeds reinvested. Acting under decree of the County Court the trustee sold the land of the wife and children for a fair price, conveyed it to the purchaser, and transmitted the money to Missouri, where the wife and children resided, and invested it in a tract of land which was conveyed to them—the husband and father of the children having meanwhile died. The grantees knew that the Missouri land was purchased with the proceeds of the sale of the Virginia land. The trustee acted in good faith in making the sale and conveyance. Eighteen years after receiving the deed to the Missouri land, and nearly four years after the youngest child had become of age, and after the trustee had become insane, and the Virginia lands had been aliened to various persons who had greatly improved them and erected costly buildings thereon, this suit was instituted by the widow and children to recover the lands, without offering to return the money invested in the Missouri land.

*Held:* Without passing on the effect of the proceedings in the County Court, the deed from the trustee passed the legal title to the purchaser, and was a voidable, and not a void, transaction, and capable of being validated by subsequent acquiescence and ratification of those interested. The parties in interest have acquiesced in, and ratified the transaction, and cannot now ask to have the same set aside.

Appeals from a decree of the Hustings Court of the city of Roanoke, pronounced June 27, 1896, in three chancery causes heard together, wherein the appellants, respectively, were the complainants, and the appellees, respectively, were the defendants.

*Affirmed.*

The opinion states the case.

*McHugh & Baker* and *John H. Wright*, for the appellants.

*Watts, Robertson & Robertson, Phlegar & Johnson, S. Griffin* and *R. H. Logan*, for the appellees.

KEITH, P., delivered the opinion of the court.

These three cases were instituted in the Hustings Court for the city of Roanoke, were heard together, disposed of by the same decree, and will be treated in this opinion as presenting a single controversy.

The plaintiffs are the widow and children of James McClanahan, who, prior to 1860, removed from the county of Roanoke, in this State, to Buchanan county, in the State of Missouri. His father, James McClanahan, Sr., died, leaving a will, by which he disposed of considerable real and personal estate. This will is dated April 10, 1865, and was admitted to probate in the county of Roanoke in November of that year. By it he divided his property among his children, and by the 6th clause of the codicil, he appoints his son, "Elisha B. McClanahan, trustee, to receive and hold for the wife and children of my son, James McClanahan, the share of my estate that would be coming in to my said son James, said share not to be subject to the debts or contracts of my said son James."

James McClanahan seems not to have prospered in Missouri. There is a letter from him in the record, dated July 21, 1869,

addressed to his sister, in which he refers to a proposition made in a letter from her to him for the purchase by his brother-in-law, a Mr. Word, of his interest in his father's estate.  He says: "You can tell him (Mr. Word) I will take fifteen hundred dollars for my interest, as I have bought a piece of land on conditions that I can get that money to pay for it.  I am not able to buy and pay for it without I can get that money, unless I buy on time, and in that case it will cost more than I am willing to risk.  *  *  *  *  *  *  *  *  *  *  I have had a hard row to hoe since the war commenced, lost all the little I had, and have had to work for ten children, pay house rent, and buy all that we used of everything, though, as high as everything has been, have been able by economy and perseverance to live.  This year I have a crop of wheat, but owing to the wet weather it has not turned out much.  My corn crop looks well, and I hope from this on, I will be able to get on better."

Some time after that a suit was instituted in the County Court of Roanoke, in which all proper persons were made parties, having for its object the partitioning of the real estate of James McClanahan, Sr., or its sale, in the event that it proved to be not susceptible of partition in kind, and with the additional prayer that, when partitioned among those entitled, if it should be made to appear to be for the interests of the wife and children of James McClanahan, Jr., the share set apart for them should be sold, and the proceeds of sale be reinvested for their benefit.  The land was partitioned; the share allotted to the wife and children of James McClanahan, Jr., was sold by Elisha B. McClanahan, trustee, to David C. Yates by deed dated September 8, 1873, and the proceeds were transmitted to Missouri, and invested in real estate purchased from William and Elizabeth Sutton.  The sum of $3,300 in cash was paid for this land, and a deed made conveying it to the widow and children of James McClanahan, Jr., who was then dead.

D. C. Yates has from time to time disposed of the land purchased by him from McClanahan, trustee, and he and his

alienees are made parties defendants to this litigation. Answers were filed and proofs were taken by which the facts heretofore stated are developed; and it is further shown that James Mc-Clanahan, Jr., left ten children surviving him; the eldest, James W. McClanahan, born June 1, 1850, and the two young-est, Lucy F. and Mary L., born, respectively, January 2, 1865, and August 19, 1867. These suits were commenced on the 30th day of March, 1892, nearly four years after the youngest child had attained her majority. Elisha B. McClanahan, un-happily, became a lunatic a short time before these suits were instituted, and died a very little while afterwards.

The claim of the plaintiffs is that the County Court of Roa-noke had no jurisdiction to sell the real estate of persons under disability; that the proceedings in that court in the suit of *McClanahan et als. v. Word et als.*, in which the real estate of James McClanahan, Sr., was partitioned, and the trustee, E. B. McClanahan, was directed to sell and reinvest the share allotted to the wife and children of James McClanahan, Jr., were a nullity; and that the Act of Assembly, passed the 3d day of February, 1873, upon which the appellees rely to vali-date those proceedings, was in violation of the constitutional restraint upon legislative power, and was likewise null and void, and ineffectual to accomplish that purpose. They further contend that the deed from Elisha B. McClanahan, made in pursuance of the decree in that cause, was a breach of the trust reposed in him; was in excess of his authority, and absolutely void; and that neither by force of judicial proceedings, nor by the act of the legislature, which vainly attempted to give validity to them, nor by the deed from the trustee which undertook to convey the real estate in controversy, was any right or title thereto vested in D. C. Yates, and that all who took under that deed took with notice of its infirmity. They, therefore, pray that the said deed, and all subsequent conveyances, may be set aside and annulled; that the complainants may be put in pos-session of the land; and that the defendants be required to ac-

count for the rents and profits during the period they have had it in possession.

The defences relied on are: That equity has no jurisdiction, the remedy of the complainants being complete and adequate at law; that the judicial proceedings in the suit in the County Court of Roanoke, aided by the special legislation, to all of which reference has been made, together with the deed from the trustee, vested a good title in D. C. Yates to the land in controversy; and that if this be not true, the complainants have acquiesced in all that has been done; have received and enjoyed the money arising from the sale of the land in Virginia, which was reinvested for their benefit, knowing the source from which it came, and have so dealt with the property thus purchased, and with the money derived from the sale of the land in controversy, as to estop them from disaffirming what has been done, especially in view of the fact that they made no offer to return that which they have received.

There is a general charge of fraud in the bill made by the plaintiff against their uncle and trustee, but there is not a shadow of proof to substantiate it. From all that appears, he acted in perfect good faith, and was animated by no other purpose than to deal with the trust confided to his care so as to promote the best interests of the beneficiaries.

There is some attempt to show that the plaintiffs in their dealings in this matter acted in ignorance of their rights; that they were not informed as to the source from which the money was derived which was received and reinvested in their name in property purchased from Sutton and wife; but the evidence is conclusive to the contrary.

The will of James McClanahan devises a share of his estate to a trustee to "hold for the wife and children of my son, James McClanahan," and the deed from Sutton and wife is to the widow and children, naming them all. This coincidence between the beneficiaries under the will and the numerous grantees in the deed is not accidental, and, when taken in connec-

tion with the fact that the appellees had a copy of the will of their grandfather, it is strongly confirmatory, if indeed corroboration were needed, of the evidence of James W. McClanahan, the eldest of the children, who testifies with candor and frankness upon this subject. He states that his father left no real estate, and very little personal property; that he had been a renter of land, and upon his death the family talked among themselves about selling their interest in Virginia, and reinvesting it in Missouri; that they wrote to their uncle Elisha about selling the land (as their father had done before them); and the conclusion is irresistible that the proceedings taken, looking to a sale of the Virginia property, were instituted in accordance with the suggestions thus made to the trustee by the father, and, upon his death, by the elder brother as representing his mother, younger brothers, and sisters. He states that the Sutton land was bought in the latter part of 1872, and that the money paid for it came from his uncle Elisha in Virginia, and that, in transmitting it, his uncle stated that it came from the estate of James McClanahan, Sr.

It appears further from his deposition that these children have conveyed their shares in this land to John McClanahan, who now owns the whole of it, with the exception of the shares of Sallie and Anna Reynolds; and from their depositions it appears that they also have agreed to sell their shares to their brother John.

A careful study of the record leads us irresistibly to the conclusion that the plaintiffs knew that the money invested in the land purchased of Sutton was the proceeds of the sale of land devised to them by their grandfather in Virginia; that the sale and transmission of the proceeds to Missouri, and their reinvestment, were free from all fraud; that the property in Roanoke was sold at a fair price, and judiciously reinvested, with the knowledge and approval of those interested who have received the benefit of it during their infancy, and have, by their course of dealing with the subject since they attained their majority,

approved and confirmed what was done in their behalf while they labored under legal disability.

Without passing upon the effect of the proceedings had in the County Court of Roanoke, we are of opinion that the deed from Elisha B. McClanahan to D. C. Yates passed the legal title to the vendee, and was a voidable, and not a void, transaction, and was one, therefore, capable of being validated by the subsequent acquiescence and ratification of those interested. Having knowledge of what had been done, it was the duty of the appellants to disaffirm the transaction entered into in their behalf promptly on coming of age. Instead of doing so, they waited more than three years and a half after the youngest of them had attained her majority, and all of them have dealt with the property as their own in which the proceeds of the land they are now seeking to recover were invested. After such inexcusable delay in the assertion of their rights, superadded to positive acts of affirmance; after having waited until the trustee, who acted in their behalf, had become a lunatic and died, it is too late for the appellants to come into a court of equity and ask to have this sale annulled, and rights disturbed which vested twenty-five years ago, and which have been transmitted to a long succession of alienees, who have expended large sums of money in the development and improvement of the property purchased, and that, too, without any offer to return the consideration which they have received.

For authority for this propositon we shall content ourselves with citing the opinion of Judge Moncure in the case of *Mustard* v. *Wohlford*, 15 Gratt. 341, in which he uses the following language:

"While the effect of avoiding the contract of sale by an infant is, on the one hand, to entitle him to demand and recover the property sold, so it is, on the other hand, to entitle the other contracting party to demand and recover the consideration received by the infant, or so much of it as may then remain in his hands in kind. Indeed, if the infant, after arriving at age, and

before any act of disaffirmance by him, alien any part of the consideration, or exercise any unequivocal act of ownership over it, or retain it in his hands in kind for an unreasonable length of time, he may thereby affirm the contract and render it absolutely binding. Also *Hillyer* v. *Bennett,* 3 Edw. Ch. 222; 2 Story's Equity Jurisprudence, sec. 1262.

The appellees rely also in support of their bill upon the statute of limitations, but we deem it unnecessary to consider that, and other interesting questions arising upon the record.

For the reasons already given, we are of opinion that there is no error in the decree complained of, and it is affirmed.

*Affirmed.*