# Wytheville.

## LASH HUTCHINSON v. COMMONWEALTH.

### June 15, 1922.

1. LARCENY—*Evidence—Identification of Stolen Property.*—Accused was convicted of larceny of Liberty Bonds sent by a New York bank to a Lynchburg bank, and delivered at the post office to a runner of the Lynchburg bank, who lost them. Accused objected to the action of the trial court in allowing the assistant cashier of the Lynchburg bank to give testimony to the effect that one bond which was recovered was like the four accused was charged with having stolen, and that an envelope shown the witness was like the envelopes in which Liberty Bonds came to his bank from the New York bank. Counsel for accused had admitted that the bonds in question came from the New York bank to the Lynchburg bank. A letter from the New York bank, showing a description of the bonds, was introduced without objection from the accused, and the finder of the property had testified as to the description of the envelope.

   *Held:* That the evidence objected to was admissible to further identify the stolen property.

2. ACCOMPLICES AND ACCESSORIES—*Admissibility of Conversations with an Accomplice out of the Presence of the Accused—Harmless Error.*— The admission of evidence as to conversations of an alleged accomplice of accused, not in the presence of accused, was harmless, where such conversations were not prejudicial to accused.

3. APPEAL AND ERROR—*Evidence—Overruling Objection to Answer of Witness—Same Answer Elicited Upon Cross-Examination—Waiver.*— After the court had overruled an objection of the accused to a statement of a witness, counsel for the accused elicited the same statement from the witness in reply to a question put by him.

   *Held:* That under the circumstances, the action of the court in overruling the objection was not reversible error.

4. LARCENY—*Evidence—Disposition of Stolen Property.*—Where in a prosecution for larceny of certain Liberty Bonds, it was already in evidence that accused had received the Liberty Bonds and carried them in his pocket to Baltimore, it was manifestly proper for the Commonwealth to show what became of the bonds after they reached Baltimore, and what part the accused took in disposing of them.

5. EVIDENCE—*Objections to Evidence—Waiver of Objections.*—In a prosecution for larceny, the trial court overruled the objection of accused to the testimony of a certain witness, but the witness was fully cross-examined on this subject by counsel for the accused, and the accused

subsequently testified as to the same matter on direct examination. *Held:* That this constituted a waiver by accused of his original objection.

6. LARCENY—*Receiving Stolen Property—Lost Property—Instructions.*—In a prosecution for larceny of Liberty Bonds, the jury were instructed that before accused could be convicted the Commonwealth must show that the bonds were stolen property at the time accused received them, and that he knew them to have been stolen.

*Held:* That accused could not object to such instruction as it was more favorable than he was entitled to, because if the bonds were lost property, still the accused could be guilty of their larceny.

7. INSTRUCTIONS—*Repetition.*—Where in a criminal case the jury was sufficiently instructed by the instructions granted by the trial court, there was no error in the action of the court in refusing to give other instructions asked for by the accused.

8. LARCENY—*Receiving Stolen Goods—Election by Commonwealth—Lost Property.*—In the instant case, accused being indicted for larceny and having failed, as he might have done under section 4451 of the Code of 1919, to demand a statement in writing from the attorney for the Commonwealth of what he intended to rely upon to ask for a conviction, the prosecuting attorney was entitled to ask for a conviction for receiving stolen bonds, or for receiving lost bonds, as might be shown by the evidence.

9. LARCENY—*Lost Property—Knowledge of Owner.*—To constitute larceny of lost property, the person finding it must know, or have the means of knowing, the owner, or have reason to believe that the owner may be discovered, and he must intend at the time of finding the property to appropriate it to his own use.

10. LARCENY—*Lost Property—Knowledge of Owner—Case at Bar.*—In the instant case, a prosecution for larceny of Liberty Bonds, there was sufficient evidence in the record to satisfy the jury that the accused received the bonds in Lynchburg, knowing that they were the property of the First National Bank of Lynchburg and were stolen property, and with such knowledge appropriated the bonds to his own use. But, under the indictment charging the accused with the larceny of the bonds, it was not necessary, before the jury could convict accused, for the jury to believe the bonds were stolen. If at the time the accused received the bonds in the city of Lynchburg he knew they were lost property, and who the owner was, or had the means of discovering who the owner was, and took the bonds with intent to convert them to his own use, he was guilty of larceny.

11. LARCENY—*Finder of Stolen Property—One Receiving the Property from the Finder.*—The law is that one who receives lost property from the finder directly or through another assumes, in legal contemplation, as to the owner and the property, the relation occupied by the finder, placing himself in the finder's stead; and in such case, whether or not the person receiving the lost property is guilty of larceny must be determined on the same principles that govern in

the case of the actual finder. Otherwise, a person knowingly receiving lost property from the finder, who had no intent to steal, with the felonious intent to appropriate it to his own use, escapes punishment.

Error to a judgment of the Corporation Court of the city of Lynchburg.

*Affirmed.*

The opinion states the case.

*Hester & Hester*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, and Leon M. Bazile, Second Assistant Attorney-General*, for the Commonwealth.

WEST, J., delivered the opinion of the court.

The plaintiff in error, Lash Hutchinson, hereafter called the accused, was convicted by a jury in the Corporation Court of the city of Lynchburg, on an indictment charging him, Thomas Rucker (alias Thomas Ruffin), John Henry Garland, William Jones and five others with the larceny of five one thousand dollar bonds of the Third Liberty Loan issue, and given four years in the penitentiary. The trial court sentenced him accordingly and the case is here upon a writ of error to that judgment.

On June 25, 1921, the runner for the First National Bank of Lynchburg went to the post office of that city and receipted for a registered package from the National City Bank of New York city, addressed to the First National Bank of Lynchburg, Virginia. This package was a large envelope with the name and address of the sender on the bottom, and a red seal on the back, thereof, and contained five one thousand

dollar bonds of the Third Liberty Loan. On his way back to the bank the runner dropped the package on the street and shortly thereafter Thomas Ruffin, who is jointly indicted with the accused, found it by the curbing on Church street with dirt on it, as if people had been walking on it. Ruffin claims he can neither read nor write. He took the package to the pool room and called William Jones, who is also jointly indicted with the accused, to the rear of the room and showed it to him.

John Henry Garland testified that he went to school with Thomas Ruffin and that Ruffin was "smart" and could both read and write. On the same day Ruffin cut five coupons from the bonds and turned four of the bonds over to William Jones, and got a Mr. Kyle to cash one of the coupons for him, telling him that he sold his place to get money to buy the bonds. The next day he applied to Kyle to cash another of the coupons and told Kyle that that coupon belonged to his brother. Ruffin delivered the four bonds to Jones with the understanding that he should receive five hundred dollars for them. The next day Jones went on an excursion to Roanoke where, at the suggestion of John Henry Garland, he met the accused and told him about the bonds, and that they had been found by Thomas Ruffin in Lynchburg, and the accused said they could be cashed in Baltimore and agreed to go to Baltimore and get them cashed.

The accused phoned Jones that he would be in Lynchburg on a certain train and asked Jones and Garland to meet him at the station, which they did. Jones thereupon delivered one of the bonds to the accused and went to his home and got the other three and upon his return delivered them to the accused and told him the bonds were found by a boy named Thomas

Ruffin and that they came from the National City Bank in New York to the First National Bank of Lynchburg. The accused said he did not know where to put the bonds, that he ought to have a pocket in his coat sleeve, but did not, so he put them in his coat pocket. Accused had the bonds in his pocket in Lynchburg for several hours before their train left for Baltimore. He paid the railroad fare of all three to Baltimore and upon his arrival there met a former acquaintance, Dick Jones, who advised him to see one Davenport, through whom the accused sold one of the bonds for $600.00. The money, after paying Davenport $100.00 for his assistance, was divided among William Jones, Garland, Dick Jones and the accused. The accused telegraphed $110.00 of the amount he received to his home in Roanoke and left the other three bonds with Davenport with the understanding they would be sold the next morning.

The accused learned the next morning that the police were on his trail and at his suggestion all three left Baltimore in a hurry and got breakfast in Washington, without hearing from Davenport as to the sale of the three bonds. William Jones did not see either of the four bonds after he delivered them to the accused in Lynchburg and the accused had entire control of them from that time on. When the accused was arrested he denied that he had been to Baltimore or had any dealings with Garland, or William Jones.

The foregoing facts appear in the evidence introduced on behalf of the Commonwealth.

The accused, the only witness sworn in his behalf, admitted that he made sale of one of the bonds in Baltimore and appropriated a part of the money to his own use, telegraphing most of it to his home in Roanoke; and that he left the other three bonds with

Davenport in Baltimore to be sold. He denied that he received the bonds in Lynchburg, but did not deny that William Jones told him in Lynchburg that Thomas Ruffin found the bonds and that they were sent by the City National Bank in New York to the First National Bank in Lynchburg, Virginia.

The accused relies on nine assingments of error to the rulings of the trial court.

[1] The first five relate to the introduction of evidence, and the first is based on the action of the court in allowing J. L. Jones, assistant cashier of the First National Bank of Lynchburg, a witness for the Commonwealth, to give testimony to the effect that the one bond which was recovered from a broker in Roanoke was like the four the accused was charged with having stolen, and that the envelope shown the witness, with red seal on the back, and the address of National City Bank, New York, at the bottom, was like the envelope in which all their Liberty Bonds came to his bank from National City Bank of New York. Counsel for the accused had already admitted that the bonds in question came from the National City Bank of New York to the First National Bank of Lynchburg by registered mail.

Thomas Ruffin testified that the package he found had a red seal on it, and a photograph of the registry receipt and a letter from the New York bank to the Lynchburg bank, showing a description of the bonds shipped, had been introduced without objection from the accused. Under these circumstances the evidence objected to was clearly admissible to further identify the stolen property.

[2] The second assignment is to the action of the court in permitting Thomas Ruffin, a witness for the Commonwealth, to testify to conversations he had with

William Jones and one Kyle, out of the presence of the accused.

The tendency of the testimony of the witness, in his conversation with Jones, was to show that he did not know who the owner of the bonds was, at the time they came into his possession, and was not prejudicial to the accused. The testimony given touching a conversation with Kyle had reference to coupons Ruffin took from the bonds soon after they were found. If there be error in this ruling it was harmless.

[3] The third assignment of error is to the action of the court in allowing John Henry Garland, a Commonwealth's witness, to make this statement: "On the 26th day of June 1921, Sunday morning, William Jones came to me and told me he had money enough to buy a Stutz roadster. I said, where did you get it? and he said, you will see, and on Monday morning * * * * ."

It appears from the record that after the court had overruled the objection of the accused to this statement, counsel for the accused asked the same witness: "How many bonds did he tell you he had?" To which he replied, "he didn't say how many but told me Sunday that he had enough to buy a Stutz roadster." The court's ruling under the circumstances was not reversible error.

[4, 5] The fourth assignment has reference to the action of the court in permitting William Jones, a witness for the Commonwealth, to testify as to the disposition of the bonds in Baltimore. Being already in evidence that the accused had received the bonds at Lynchburg and carried them in his pocket to Baltimore, it was manifestly proper for the Commonwealth to show what became of the bonds after they reached Baltimore, and what part the accused took in dis-

posing of them. Besides this witness was fully cross-examined as to this subject by counsel for the accused, and in addition, the accused subsequently also testified as to the same matter on direct examination. He therefore must be held to have waived his original objection. *Snarr* v. *Commonwealth*, 131 Va. 814, 109 S. E. 590; *N. Y. Life Ins. Co.* v. *Taliaferro*, 95 Va. 522, 28 S. E. 879; *Moore Lumber Co.* v. *Walker*, 110 Va. 775, 67 S. E. 374, 19 Ann. Cas. 314.

The fifth assignment of error is to the action of the court in permitting John Henry Garland to testify as to the same transactions in Baltimore, which were made the subject of the fourth assignment of error, when testified to by William Jones, and for reasons there stated is without merit.

The sixth, seventh and eighth assignments relate to the rulings of the court in granting and refusing instructions.

The instructions given by the court on the motion of the attorney for the Commonwealth, referred to in Bill of Exceptions No. 7, are as follows:

(1). "If the jury believe from the evidence beyond a reasonable doubt that, when the bonds in evidence came into the possession of Thomas Ruffin or William Jones, they knew, or had means of knowing, the owner, or had reason to believe that the owner might be discovered and notwithstanding kept the bonds intending to appropriate them to their own purposes, then the said Thomas Ruffin and William Jones were guilty of larceny and the bonds were stolen property."

(2). "If the jury further believes from the evidence beyond a reasonable doubt that the bonds were stolen property and that they came into the possession of the defendant, Lash Hutchinson, in the city of Lynchburg under such circumstances that the defendant must

reasonably have known that they were stolen property, and that he took possession of them intending to convert them to his own use or to assist in disposing of them, then the jury should find the defendant guilty."

The instruction given by the court of its own motion, referred to in Bill of Exceptions No. 8, is as follows:

"The court instructs the jury that before they can convict the accused they must believe beyond a reasonable doubt, first, that the Commonwealth has proved that the Liberty Bonds involved were previously stolen and were the property of the First National Bank; secondly, that the accused received them in the city of Lynchburg; thirdly, that at the time he received the said bonds he knew they had been stolen; which knowledge may be inferred from all the circumstances known to the accused prior to and at the time of receiving said bonds; and, fourthly, that he received the said bonds with a dishonest intent, and unless the jury believe that the Commonwealth has proved each of these four elements beyond a reasonable doubt, they must acquit the accused."

"The court further instructs the jury that if they believe from the evidence that the accused received the bonds in the city of Baltimore, in the State of Maryland, and not in the State of Virginia, they can not find the accused guilty, although they believe that the bonds were stolen."

The ninth assignment of error is to the action of the court in refusing to set aside the verdict, and grant the accused a new trial, on the ground that the verdict is contrary to the law and the evidence.

[6] These four assignments involve the law of the case and will be considered together.

The three instructions granted over the objections of the accused, quoted above, were more favorable to

the accused than he was entitled to. No. 1 put upon the Commonwealth the burden of proving that Thomas Ruffin and William Jones were guilty of the larceny of the bonds, which under the evidence was not necessary, before a verdict of guilty could be returned against the accused. No. 2 required the Commonwealth to prove that the bonds were stolen property at the time the accused received them; and the remaining instruction required the Commonwealth to prove beyond a reasonable doubt that the bonds were previously stolen and that at the time the accused received them he knew they had been stolen, otherwise the jury must acquit him.

[7] We are of the opinion that the jury were sufficiently instructed by the instructions granted by the court, and that there was no error in the action of the court in refusing to give the seven instructions asked for by the accused and referred to in Bill of Exceptions No. 6. It follows that the sixth, seventh and eighth assignments of error are without merit.

[8] The accused being indicted for larceny and having failed, as he might have done under section 4451 of the Code, to demand a statement in writing from the attorney for the Commonwealth of what he intended to rely upon to ask for a conviction, the prosecuting attorney was entitled to ask for a conviction for receiving stolen bonds, or for receiving lost bonds, as might be shown by the evidence.

[9] If any person buy or receive from another person * * any stolen goods or other things, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted. Section 4448, Code 1919.

To constitute larceny of lost property, the person

finding it must know, or have the means of knowing the owner, or have reason to believe that the owner may be discovered, and he must intend at the time of finding the property to appropriate it to his own use. *Tanner's Case,* 14 Gratt. (55 Va.) 635.

[10] We are of the opinion that there is sufficient evidence in the record to satisfy the jury that the accused received the bonds in Lynchburg knowing that they were the property of the First National Bank of Lynchburg and were stolen property. But, under the indictment charging the accused with the larceny of the bonds it was not necessary, in view of the testimony, for the jury to believe the bonds were stolen by Thomas Ruffin before they could convict the accused.

[11] The law is that, one who received lost property from the finder directly or through another, assumes, in legal contemplation, as to the owner and the property, the relation occupied by the finder, placing himself in the finder's stead; and in such case, whether or not the person receiving the lost property is guilty of larceny, must be determined on the same principles that govern in the case of the actual finder.

In the case of *Allen* v. *State,* 91 Ala. 21, 8 So. 655, 24 Am. St. Rep. 856, Clopton, J., speaking for the court says: "The charge to the refusal of which the first exception is taken asserts the naked proposition that if the money for the larceny of which defendant is indicted was found by his children and delivered to him, he cannot be guilty of larceny, whatever may have been his intent at the time of taking the money. Finding it, and its delivery to the defendant by the finder, did not deprive the money, as to the owner, of the character or status of lost property; the ownership remained in him, drawing to it, constructively,