# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## E. LAWSON SNEAD V. COMMONWEALTH.

### January 17, 1924.

1. SEDUCTION—*Evidence—Letter of Prosecutrix to Accused—Case at Bar.*—
   In the instant case, a prosecution for the seduction of an unmarried
   woman of previous chaste character under a promise of marriage, a
   letter from prosecutrix to accused, written after the seduction and
   prior to the birth of the child, was introduced in evidence. The
   accused did not invite or reply to this letter, or acknowledge its
   receipt. The letter read as a whole in the light of the purpose for
   which it was offered, as stated before the jury by the prosecuting
   attorney, and of the circumstances under which it was written,
   according to the testimony of the prosecutrix, contained a charge that
   the accused was guilty of the crime for which he was indicted, and
   the jury evidently so construed it and treated the letter as evidence
   in corroboration of the testimony of the prosecutrix. Without the
   letter, and the testimony of the father of the accused, the case for
   the Commonwealth rested wholly upon the uncorroborated testi-
   mony of the prosecutrix. The record disclosed an entire absence
   of any conduct of the accused, at any time, making any public mani-
   festation of devotion to the prosecutrix or evidencing to others the
   existence of any promise to her of marriage.

   *Held:* That the letter was of such character and the whole case pre-
   sented to the jury such that it appeared to be more probable than
   otherwise that the jury were influenced to some extent by the letter
   in returning a verdict against accused, and that the admission of
   the letter constituted reversible error.

2. SEDUCTION—*Corroboration of Prosecutrix—Testimony of Her Father
   Together with Inadmissible Evidence in Corroboration—Case at Bar.*—
   In the instant case, a prosecution for seduction, the testimony of
   the father of the prosecutrix in corroboration was given before the
   jury in a manner which would seem to affect its credibility. While
   the credibility of the father's testimony was for the jury, and not
   the court, to determine, and if a verdict of guilty rested upon that
   testimony alone to corroborate the prosecutrix, it could not be dis-
   turbed on appeal; yet where it seened probable that the jury gave
   some weight to a letter, written by prosecutrix to the accused and
   not replied to by him, as being evidence in corroboration of the

testimony of the prosecutrix, and that this had some influence upon their verdict, if the letter was erroneously admitted in evidence, it was reversible error.

3. DOCUMENTARY EVIDENCE—*Unanswered Letters—General Rule as to Admissibility.*—An unanswered letter is admissible in evidence as tending to prove all facts expressly stated in it, and reasonably to be inferred therefrom, in favor of the writer as against the recipient of the letter, if the latter has acted upon it, or if he invited the writing of it to him, or if it is a part of a mutual correspondence on the subject, or is a part of the *res gestae,* or refers to an existing contract, or amounts only to a demand or notice to the same effect as an account rendered.

4. CRIMINAL LAW—*Seduction—Evidence—Letter Written by Prosecutrix—Case at Bar.*—In the instant case a letter from prosecutrix to accused was introduced in evidence. The letter was not answered or acted upon in any way by the accused, nor did he invite the writing of it to him. It was not a part of a mutual correspondence between accused and prosecutrix. It was written long after the seduction, so that it was not a part of the *res gestae.* And the instant case being a prosecution of accused for the commission of a criminal offense, complete when the seduction was accomplished, it is immaterial whether prosecutrix did or did not thereafter demand marriage, as such demand is not an element of the offense. And the instant case not being a civil action, the letter was not admissible as referring to an existing contract or as making a demand or giving notice of the amount of money claimed to be owing. It is apparent, therefore, that there was no ground on which the letter could be considered as properly admissible in evidence in the instant case.

5. SEDUCTION—*Evidence—Unanswered Letter—Case at Bar.*—That there was nothing in an unanswered letter from prosecutrix to accused that the prosecutrix might not have said to the accused personally did not render the letter admissible in evidence, for the very reason that she did not make the statement to him personally. The distinction is that the respective statements, by letters and *ore tenus,* are essentially different in character; the oral statement made directly to the adverse party being admissible, and the statement by letter being inadmissible, because the person to whom the statements are addressed may be reasonably considered as called upon to make some reply to the contrary, if he does not acquiesce in the statement in the former case, whereas he is not in the latter.

6. SEDUCTION—*Evidence—Unanswered Letter—Waiver of Objection—Case at Bar.*—In the instant case, a prosecution for seduction, an unanswered letter of prosecutrix to accused was erroneously admitted in evidence. Counsel for accused cross-examined prosecutrix as to the writing of the letter, and accused himself testified on the subject of the letter, denying ever having received or read it, or known of it until it was introduced in evidence on the trial.

*Held:*  That by such cross-examination and testimony accused did not waive his objection to the admission of the letter.

7.  Evidence—*Waiver of Objection to Evidence—Cross-Examination and Introduction of Rebuttal Testimony—Introduction of Similar Testimony.*— The mere cross-examination of a witness or the introduction of rebuttal evidence, either or both, will not constitute a waiver of an exception to the testimony of a witness which has been duly taken. To constitute such a waiver the party objecting to the evidence must have gone further and introduced on his own behalf testimony similar to that to which the objection applies.

Error to a judgment of the Circuit Court of Nelson county.

*Reversed and new trial awarded.*

The accused was convicted of the offense of the seduction of an unmarried woman of previous chaste character under a promise of marriage.

One of the assignments of error is that the Commonwealth was allowed, over the objection of the accused, to introduce in evidence the following letter addressed to the accused, which the prosecutrix testified she wrote after the seduction and prior to the birth of the child; and which the father of the prosecutrix testified he saw, on a subsequent occasion, fall out of the coat pocket of the accused:

"Schuyler, Va.
"Sunday A. M.

"My dear Lawson:

"I will write you this morning thinking how you are treating me, you know how good I have been to you and now for you to do me this way. I wrote you two letters about it, asking you what you were going to do and you never said a word.

"But please answer this, say yes or no. It makes no difference with me. So answer and give to me by tomorrow night. If not I'm going to tell papa all about it

and he can come and see you as you won't tell me anything, so ans. and give to me by tomorrow night. I heard you and Ruby Carter were going to get married and if you do it will certainly go hard with you.

"From Jack Ragland.

"P. S.   Please ans. and tell me something by tomorrow night."

The uncontroverted evidence is that the accused did not invite or reply to, or in any way acknowledge the receipt of this letter, nor in any way act upon it.

Other facts and circumstances are referred to in the opinion.

*Perkins, Walker & Battle* and *McNutt & Rinehart,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant-Attorney General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error which we find it necessary to decide will be disposed of in their order as stated below.

[1] 1. Is the letter of such character and the whole case presented to the jury such that it appears to be more probable than otherwise that the jury were influenced to some extent by the letter in returning the verdict against the accused, so that the admission of the letter in evidence, if erroneously admitted, constitutes reversible error?

The question must be answered in the affirmative.

The letter, in its opening sentence, conveys the meaning that the prosecutrix charged the accused with treating her wrongfully by his conduct; which conduct, the succeeding portions of the letter charge, amounted to a crime; else why the threat of prosecution contained in the last sentence of the letter; and when the whole letter is read in the light of the purpose for which it was offered in evidence, as stated before the jury by the prosecuting attorney, and of the circumstances under which it was written, in accordance with the testimony of the prosecutrix, it seems plain that it contains the charge that the accused was guilty of the crime for which he was indicted, namely, of seduction under the promise of marriage; and the jury evidently so construed it and thus treated the letter as evidence in corroboration of the testimony of the prosecutrix.

As shown by the record, the purpose for which the letter was introduced in evidence was, as stated before the jury by one of the prosecuting attorneys, as follows:

"Now she" (the prosecutrix) "has testified that this man had promised to marry her, and we want to introduce that letter to show that she relied on his promise and wrote to him to come and marry her when she was in that fix."

The prosecutrix testified on the subject of the letter in substance as follows: That the child was born on May 8, 1922 (which by the calendar was Monday). That she wrote the letter on a Sunday morning in the year 1922 (which other testimony in the record shows must have been on some Sunday in 1922 prior to the Monday which was May 8, 1922, but there is no testimony or other evidence indicating whether this was on the Sunday immediately prior to May 8th or on what other Sunday in 1922 prior thereto). That she wrote

the letter so that the accused would marry her. That she did not use the word "marry" in the letter, but by it asked accused to answer whether he was going to marry her. That the accused understood the letter, "because he had been told about it." That he had promised to marry her but had never told her "when."

Without the letter and without the testimony of the father that when called to account by him the accused admitted the seduction under promise of marriage, the case for the Commonwealth rested wholly upon the uncorroborated testimony of the prosecutrix. This conclusion follows from the fact that the record discloses, even taking the testimony of the prosecutrix and the other testimony for the Commonwealth at its face value, an entire absence of any conduct of the accused whatsoever, at any time, making any public manifestation of devotion to the prosecutrix or evidencing to others the existence of any promise to her of marriage. The case is on all fours with *Riddleberger* v. *Commonwealth*, 124 Va. 783, 97 S. E. 310, only it is strikingly more meagre of circumstances of conduct evidencing any kind of social relations existing between the parties than in that case, if we leave out of view the letter and the testimony of the father as to the admission of guilt aforesaid.

[2] With respect to the father's testimony, this will be said: It was given before the jury in a manner, which as it appears in the record, would seem to affect its credibility. It is true that it was for the jury, and it is not for the court, to say whether the father was truthful in his belated statement containing this testimony, made after having expressly testified that what he had previously narrated "was all that was said," and in answer to a leading question from the prosecuting attorney; and if the verdict rested upon that testimony

alone to corroborate the prosecutrix, the court could not disturb the verdict.    But did the jury reach their verdict upon that testimony alone?    It seems to us, to say the least on the subject, that it is more probable than otherwise, from the situation disclosed by the record, that the jury gave some weight to the aforesaid letter as being evidence, as aforesaid, in corroboration of the testimony of the prosecutrix and that this had some influence upon their verdict against the accused.    This being so, if the letter was erroneously admitted in evidence, it is reversible error.

We now come to the consideration of the question upon which the decision of the case on the appeal turns, namely:

[3] 2. Was the letter aforesaid admissible in evidence in the case?

The question must be answered in the negative.

We have not been able to find any authority under the holding of which, as far as we can see, it can be said that the letter was admissible, and upon principle we do not think that it was admissible in evidence.

According to the general rule, stated in Wharton's Cr. Ev. (10th ed.), section 682, the letter was inadmissible in evidence.

The general rule mentioned as stated in the authority just cited is as follows:    "The fact that an unanswered letter or other paper is found in the custody of a party, but not acknowledged by him, is not ground for the admission of the paper as evidence against him.    Were it admitted, an innocent man might, by the artifices of others, be charged with a *prima facie* case of guilt which he might find it difficult to repel.    It is otherwise, however, when the party addressed in any way invited the sending to him of the letter, or when there is any ground to infer he acted on the letter.    Where such tacit recog-

nition is.claimed, the whole conversation or correspondence which constitutes the recognition must be given."

It is true that, speaking generally and exclusively of "Private writings and publications," constituting "documentary evidence," in 2 Wharton's Cr. Ev. section 527d, this is said: "The reception of such evidence rests in the discretion of the trial court and his ruling will not be disturbed unless an abuse of the discretion is shown." But an examination of the note to this section discloses that reference is made to no case in which any letters are held admissible in evidence in a criminal case against the accused, other than his own letters or those of some accomplice in the crime charged.

In 2 Wigmore on Ev. page 1264, this is said: "So far as any definite rule is concerned then, it seems impracticable; and the precedents indicate that such case must stand on its own facts." But this is said concerning civil cases, exclusively, and is confined in its scope to "documents of demand, received but not answered," involved in civil cases of actions for money had and received or actions of that nature, as appears from the same work, pages 1261, and 1264, note 3. It is elementary that in such cases proof of demand upon or notice to the defendant by the plaintiff before suit is, in some instances, admissible as a material circumstance, and a letter from the plaintiff to the defendant containing such demand or notice is, of course, admissible in evidence for that purpose, but for that alone.

One of the earliest cases on the last named subject is that of *Fairlie* v. *Denton*, 3 C. & P. 103, 14 Eng. Com. Law Rep. 225, which was an action for money had and received. The plaintiff wrote a letter to the defendant which the defendant did not answer. At the trial the plaintiff's counsel called for the letter, under notice to produce, with a view to reading it in evidence as a part of the plaintiff's case.

Counsel for the defendant objected to the admission of the letter on the ground "that an unanswered letter, written by the plaintiff, was not evidence in his own favor; for otherwise a party would only have to write a letter to make evidence for himself."

Counsel for plaintiff replied, stating that "certain things are stated in this letter which the defendant might deny by answering it; and, I submit, that it is evidence, exactly the same as what is said verbally in the presence of a defendant is evidence against him, though he may make no answer."

Lord Tenterdon, C. J., thereupon rendered. the decision of the court as follows: "I am slow to admit that. What is said to a man before his face, he is in some degree called on to contradict, if he does not acquiesce in it; but the not answering a letter is quite different; and it is too much to say that a man, by omitting to answer a letter at all events, admits the truth of the statements that letter contains. I am of opinion that this letter cannot be read. You may have the single line read in which the plaintiff makes a demand of a certain amount, but not any other part which states any supposed fact or facts."

Later decisions in England and in this country concur in the holding that an unanswered letter is admissible in evidence as tending to prove all facts expressly stated in it and reasonably to be inferred therefrom, in favor of the writer as against the recipient of the letter, if the latter has acted upon it, or if he invited the writing of it to him, or if it is a part of a mutual correspondence on the subject, or is a part of the *res gestae*, or refers to an existing contract, or amounts only to a demand or notice to the same effect as an account rendered. See *Smith* v. *Shoemaker*, 17 Wall. 630, 21 L. Ed. 717; *Robinson* v. *R. Co.* (Mass.), 7 Gray 92; *Fearing* v. *Kimball*

(Mass.), 4 Allen 125, 81 Am. Dec. 690; *Waring* v. *Tel. Co.* (N. Y.), 44 How. Pr. 69; 8 A. L. R. 1163-1170; and other authorities referred to below.

As said in 8 A. L. R. 1163: "As a broad general rule, subject to several exceptions hereinafter considered, it seems that a letter, which is not a part of a mutual correspondence and to which no answer is made, is not ordinarily admissible in favor of the writer as evidence of the statements therein contained, the failure to reply not being considered as an implied admission of the truth of the statements made." Citing Ala., La., Md., Mass., Mich., Neb., N. J., N. Y., and English cases.

The exceptions mentioned in the quotation just made are only three; where the letter is part of the *res gestae,* relates to an existing contract, or contains merely a demand or notice. 8 A. L. R. pages 1166-7, 1168-70.

In *Wiedeman* v. *Walpole,* 24 Q. B. Div. (L. R.) 537, no objection was made to the introduction of the letters in evidence, nor motion made to exclude them. It clearly appears, however, from the opinion of the court in the case, that the letters were held to constitute no evidence of the statements contained in them, which, in substance, held that they were inadmissible in evidence had objection been made thereto.

In *Lee* v. *Cooley,* 13 Ore. 433, 11 Pac. 70, the defendant made a reply to the letter, which brought it within one of the established qualifications of, or exceptions aforesaid to, the general rule on the subject, so as to render it admissible in evidence.

In *Gaskill* v. *Skene,* 19 L. J. Q. B. 275, 14 Jur. 597, 117 Eng. Rep. (Full Reprint) 256, the letter was in substance merely a demand of a certain amount as money claimed to be owing the plaintiff, so that the letter was admissible under the doctrine of *Fairlie* v. *Denton.*

[4] In the instant case it appears from the testimony,

without conflict, that the letter was not answered or acted upon in any way by the accused; that he did not invite the writing of it to him; that it was not a part of a mutual correspondence between himself and the prosecutrix; and that it was written and received long after the seduction, so that it was not a part of the *res gestae.* And this being a case of prosecution of the accused for the commission of a criminal offense which was complete when the seduction was accomplished, if there was any seduction, whether the prosecutrix did, or did not thereafter, demand marriage is immaterial, as such demand is not an element of the offense. And, further, this not being a civil action, the letter was not admissible as referring to an existing contract or as making a demand or giving notice of the amount of money claimed to be owing. It is, therefore, apparent, as it seems to us, that there is no ground known to the law on which the letter can be considered as properly admissible in evidence in the instant case.

The principle which renders such a letter inadmissible in evidence in such a case is, in *People* v. *Green* (N. Y.), 1 Parker Cr. R. 11, stated thus: "It would be placing a man entirely at the mercy of others, if he was bound by what others choose to assert in addressing letters to him. In no sense could his silence be considered an admission of such facts."

[5] That there was nothing in the letter that the prosecutrix might not have said to the accused personally does not render the letter admissible in evidence, for the very reason that she did not make the statement to him personally. The distinction is that the respective statements, by letters and *ore tenus*, are essentially different in character, as all of the authorities on the subject recognize, the oral statement made directly to the adverse party being admissible, and the statement by let-

ter being inadmissible, because the person to whom the statements are addressed may be reasonably considered as called upon to make some reply to the contrary if he does not acquiesce in the statement in the former case, whereas he is not in the latter.

Moreover, the weight which a juror or judge will give the documentary evidence furnished by a letter is inherently greater than that given to oral testimony purporting to be to the same effect. Further, the act of writing a letter is in its nature a matter of conduct, and, if it occurs before the litigation begins, is given a certain additional weight on that account, if it is once admitted in evidence. But, conduct of a prosecutrix which is not a part of the *res gestae*, which occurs after the offense to be prosecuted, if there be one, is complete, may be but self-serving in its purpose. Again: As recognized by the authorities on the subject, without exception, so far as we have been able to find, the contents of the letter in the instant case were inadmissible in evidence. The objection to the inadmissibility in evidence of such a letter in such case goes indeed to its contents. Hence, even if the letter had been lost, the testimony of the prosecutrix would have been inadmissible to prove such contents. As a matter of fact, however, the Commonwealth, in the instant case, did not attempt such oral proof of the contents of the letter, but sought and was allowed to introduce the letter itself in evidence.

In our investigation of the authorities on the subject under consideration, including both criminal and civil cases, we have found only one case in which unanswered letters of anyone, addressed to the accused himself, were held to be admissible in evidence, unless it was first made to appear that the letters fell within some one of the qualifications or exceptions above mentioned rendering them admissible. That case is the famous *Horne*

*Tooke Trial*, 25 How. S. Tr. 1, 120 *et seq.* In the *Horne Tooke Case*, certain letters found in the possession of the accused were offered in evidence at a stage of the trial at which it had not yet appeared in evidence under what circumstances the letters were written, nor whether they had been answered, or whether they had been acted upon by the accused. Lord Chief Justice Eyre thereupon made the ruling that "all papers found in the possession of a man are *prima facie* evidence against him, if the contents of them are applicable to the subject under consideration." But in connection with this ruling the learned Lord Chief Justice said this: "Being found in your possession they are undoubtedly producible in evidence; but as to the effect of them very much will depend upon the circumstances of the contents of those letters and whether answers to them can be traced or whether anything had been done upon them. A great number of papers may be found in a man's possession which will be *prima facie* evidence against him, but will be open to a variety of explanations; and it is always a considerable explanation that nothing appears to have been done in consequence of the paper being sent to him." From which it clearly appears that the ruling there was merely that, in the absence of the showing that the letters were unanswered letters, or were unacted upon, or under what circumstances they were written, they were, for the time being, *prima facie* admissible in evidence; but that if this *prima facie* situation were overturned by subsequent evidence, the letters would thereupon no longer have any probative value, which is the same thing as holding that they would thereupon become subject to be excluded from the evidence upon motion for that purpose. It is obvious, of course, that such holding is no authority for the action of the court in the instant case in admitting

the letter in evidence after the evidence for the Commonwealth had shown the facts from which it appeared that it was inadmissible in evidence, under all of the authorities, including the *Horne Tooke Case.*

Further on the subject of what is said in the *Horne Tooke Case* aforesaid concerning the letters there mentioned being *prima facie* admissible in evidence, this is said in *People* v. *Green, supra* (1 Parker Cr. R. [N. Y.] 11): "For a general rule this is too broadly stated. I concede that there may be cases when such evidence is admissible, as where the letter is the foundation to explain subsequent and consequent action on the part of the accused, or to enable the jury to understand the answer made to the letter, or when a letter is from a person proved to be a coconspirator (2 Starkie Rep. 123). But it cannot be applicable in a case where the letter only tends to support a charge of guilt in regard to a past transaction and where it has been followed by no action and no response on the part of the person receiving the letter. * * * The opinion seems now to be established, as stated by Greenleaf in his note 3 to section 198, that the possession of unanswered letters is not, of itself, evidence of its (their) contents. See also 2 Hall Rep. 40; Cow. & Hill Notes, 191, 195, and other cases there cited."

Note 3 to section 198 of Greenleaf on Evidence (15th ed.), after citing *Hewitt* v. *Piggott,* 5 C. & P. 75; *Rex* v. *Watson,* 2 Stark, 140; *Horne Tooke's Case,* 25 St. Tr. 120, says this: "But the possession of unanswered letters seems not to be of itself evidence of acquiescence in their contents; and, therefore, a notice to produce such letters will not entitle the adverse party to give evidence of their entire contents, but only of so much as on other grounds would be admissible. *Fairlie* v. *Denton,* 3 C. & P. 103. And a letter found on the prisoner was held

to be no evidence against him of the facts stated in it, in *Rex* v. *Plumer,* Rus. & Ry. C. C. 264."

[6, 7] 3. Did the accused waive objection to the admission of the above mentioned letter by his action by counsel in cross-examining the prosecutrix as to the writing of the letter and by the accused having testified on the subject of the letter, denying ever having received or read it, or known of it until it was introduced in evidence on the trial?

The question must be answered in the negative.

The cases of *Snarr* v. *Commonwealth,* 131 Va. 814, 109 S. E. 590; *Hutchinson* v. *Commonwealth,* 133 Va. 710, 112 S. E. 624; *Moore Lumber Corp.* v. *Walker,* 110 Va. 775, 778-9, 67 S. E. 374, 19 Ann. Cas. 314; *C. & O. Ry. Co.* v. *Barger,* 112 Va. 688, 72 S. E. 693; and *New York Life Ins. Co.* v. *Taliaferro,* 95 Va. 522, 28 S. E. 879, are cited and relied on by the Attorney-General to sustain the position that the accused, by the action in question, waived objection to the admission of the letter in evidence. The cases cited do not sustain the position, as was ruled in *Culbertson* v. *Commonwealth,* 137 Va. 752, 119 S. E. 87. In the last named case, this is said in the opinion of the court, delivered by Judge Kelly:

"It is argued on behalf of the Commonwealth that the objection to the testimony in question was waived by the accused when he cross-examined the witnesses who gave such testimony, and introduced testimony himself to the contrary. The cases of *Snarr* v. *Commonwealth,* 131 Va. 814, 818, 109 S. E. 590, and *Hutchinson* v. *Commonwealth,* 133 Va. 710, 717, 112 S. E. 624, and cited in support of this contention. We have never held that the mere cross-examination of a witness or the introduction of rebuttal evidence, either or both, will constitute a waiver of an exception to testimony which has been duly taken. To constitute such a waiver the party objecting

26

to the evidence must have gone further and introduced on his own behalf testimony similar to that to which the objection applies. *Snarr* v. *Commonwealth, supra; New York Life Ins. Co.* v. *Taliaferro*, 95 Va. 552, 28 S. E. 879; *Moore Lumber Co.* v. *Walker*, 110 Va. 775, 67 S. E. 374, 19 Ann. Cas. 314."

The case will be reversed and a new trial awarded.

*Reversed and new trial awarded.*

PRENTIS, J., dissenting:

I think that the restrictive rules of evidence sometimes defeat a fair inquiry into relevant facts. For this reason I am unwilling to extend any of these rules, and this consideration constrains me to dissent from the conclusions of the majority in this case.

The cases in which this question has arisen have generally been cases where the unanswered letter or document states damaging facts which, unless repelled by him, indicate the guilt of the accused, and hence his failure to reply to it is urged as showing an admission of the truth of the facts so stated. The letter here involved, however, contains no allegation of fact which tends to show the crime charged. There is no charge of seduction under promise of marriage, nor allegation with reference thereto. It is, fairly considered, a request or demand that he reply to her importunities, coupled with a threat to tell her father of their intimacy and its consequences unless he complied therewith. It is equally consistent with a meretricious intimacy, without inducement, by consent or by her own fault, as with the crime of seduction under promise of marriage.

There have been many cases involving such written

communications, but no definitive statement of the rules governing every case can be made, and the admission or rejection of such testimony depends upon the circumstances of each case.

"The reception of such evidence rests in the discretion of the trial court and his ruling will not be disturbed unless an abuse of his discretion is shown." 2 Whart. Crim. Ev. (10th ed.), section 527-d.

The distinguishing facts of each case should be considered. 2 Wigmore on Ev. section 1073, page 1264.

In *Wiedeman* v. *Walpole*, 24 Q. B. Div. (L. R.) 537, it appeared in an action for breach of promise of marriage that the defendant did not answer letters written to him by the plaintiff in which she stated that he had promised to marry her, and it was held that these letters constituted no evidence corroborating the plaintiff's testimony in support of such promise within the meaning of a statute which requires corroboration in such case. The case was argued by eminent counsel and the only controversy was as to whether such unanswered letters afforded evidence of corroboration. Neither in these arguments nor in the opinions of the court is it suggested that these letters were inadmissible as evidence. It was shown there that the defendant received, but did not reply to any of them, and it was sought to draw therefrom the inference that this constituted an admission of the facts therein stated. Kay, L. J., said: "It is clearly a letter which nine out of ten men would refuse to answer, and the refusal to answer it cannot be any corroboration. The real question is, whether the letters written by the plaintiff herself so imperatively required an answer, that the not answering is evidence that the defendant admitted the truth of the statement that he had promised to marry her. I decline to lay down any general rule on this matter. There are certain letters writ-

ten on business matters, and received by one of the parties to the litigation before the court, the not answering of which has been taken as very strong evidence that the person receiving the letter admitted the truth of what was stated in it. In some cases that is the only possible conclusion which could be drawn, as where a man states, 'I employed you to do this or that business upon such and such terms,' and the person who receives the letter does not deny the statement and undertakes the business. The only fair way of stating the rule of law is that in every case you must look at all the circumstances under which the letter was written, and you must determine for yourself whether the circumstances are such that the refusal to reply alone amounts to an admission."

In *Lee* v. *Cooley*, 13 Ore. 433, 11 Pac. 70, which was an action by a father for the seduction of his daughter, the plaintiff offered and the court admitted in evidence a letter written by the daughter after the alleged seduction and before the commencement of the suit, in which she accused the defendant of getting her into trouble, and calling upon him to marry her as he had promised. This letter was delivered to the defendant in person by the plaintiff (father) while the defendant was plowing in his own field. The defendant's verbal reply at the time he read the letter was testified to by the plaintiff. It was there held that this letter with the defendant's verbal reply thereto went on the footing of conversations between the parties. It was said, however, in the opinion that it ought doubtless to appear to the court that the letter was offered in good faith to get the defendant's declaration made in reply thereto, as well as the letter, before the jury.

A well accepted instance of an admission is the failure to dispute an account rendered, which after the lapse of

a reasonable time amounts to an admission of its correctness. Such letters have frequently been admitted in civil cases.

In *Gaskill* v. *Skene*, 19 L. J. Q. B. 275, 14 Jur. 597, 117 Eng. Rep. (Full Reprint) 256, an unanswered letter of the plaintiff to the defendant with reference to a disputed account was properly received as being in substance a demand and containing only such statements as might fairly accompany a demand.

There is a note on the subject in 8 A. L. R., page 1168, and a number of cases, English and American, are cited, holding that an unanswered letter is admissible on behalf of the writer to show a demand made or notice given thereby, citing *Hays* v. *Morgan* (1882), 87 Ind. 231; *Sonnesyn* v. *Hawbaker* (1914), 127 Minn. 15, 148 N. W. 476; *State, Hand, Prosecutor* v. *Howell* (1897), 61 N. J. L. 142, 38 Atl. 748; *Allen* v. *Peters* (1860), 4 Phila. (Pa.) 78; *Murphey* v. *Gates* (1892), 81 Wis. 370, 51 N. W. 573; *Keen* v. *Priest* (1858), 1 Fost. & F. (Eng.) 314.

There is certainly nothing in this letter which the prosecutrix might not have said directly to the accused; in fact, the case has this peculiar feature, that it was handed by her to the accused in person and hence bears close relation to an oral statement made by her to him. He made no reply in writing—indeed, he denies that he ever received it; but his oral reply to her father was in effect a reply to the letter, promptly given, and was an emphatic refusal to accede to her demands. Her father testifies that the letter itself fell out of the pocket of the accused while he was making his escape through a window immediately following their interview. The letter then is not hearsay, but contains matter identical with that to which she could testify. This being true, I am unable to agree that its admission was either illegal or prejudicial.

When objection was made to its introduction, no ground therefor was stated, and so, under well established rules, if any part of it was admissible upon any ground the exception is not well taken.    *Warren* v. *Warren*, 93 Va. 73, 24 S. E. 913; *State* v. *Hood*, 63 W. Va. 182, 59 S. E. 971, 15 L. R. A. (N. S.) 448, 129 Am. St. Rep. 964; *Hubbard* v. *Equitable Life Ins. Co.*, 81 W. Va. 663, 95 S. E. 814, 4 A. L. R. 886.

I do not question the general rule that unanswered letters in the possession of an accused person are inadmissible to show an admission or confession by such person.    We have here, however, no such case for two reasons—first, the demand contained in the letter, that is, the demand to marry her, was answered by a prompt and emphatic refusal; and, secondly, because there is nothing in the letter which, if not answered, could, in any event, be construed as an admission by him of any essential element of the specific crime charged.    Indeed, the letter does not charge the crime of seduction under promise of marriage.    I think, therefore, that as she could say to him orally all that she said in the letter, she was equally free to express it in writing, and that it was admissible just as her evidence of such an oral demand would have been admissible, as showing her conduct at that time.    The letter, indeed, is of the character of an action rather than of a statement—of conduct rather than accusation—and the contemporaneous acts of the parties in such cases are certainly admissible.